IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE L. MILLER, Chapter 7 Trustee for the Estate of Suffolk LLC, : : : Plaintiff, : : v. : : PHILIP A. CANFIELD, : : Defendant. : : | Index No._____ |

**COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO 11 U.S.C. §§ 541, 544, 548 AND 550 AND NY DCL § 270 ET SEQ.**

George L. Miller, in his capacity as Chapter 7 Trustee (the "Chapter 7 Trustee"), in the chapter 7 case of Suffolk, LLC, pending in the United States Bankruptcy Court for the District of Delaware as Case No. 07-10343, on behalf of the estate of Suffolk, LLC ("Suffolk"), files this Complaint against Philip A. Canfield (the "Defendant") and alleges as follows:

### I.    NATURE OF ACTION

1. Pursuant to a Stock Purchase Agreement by and between Defendant and Suffolk dated March 29, 2005 (the "PlusFunds Tender Offer"), the Defendant sold to Suffolk 205.50 shares of [preferred/common] stock of PlusFunds Group, Inc. ("PlusFunds") for an aggregate purchase price of $75,821.28. As was known by Defendant at the time, these shares (the "PlusFunds Shares") were worth far less than the amount paid to Defendant by Suffolk for such shares (the "Tender Amount").

2. The Chapter 7 Trustee brings this proceeding against Defendant pursuant to sections 541, 544, and 548 of title 11 of the United States Code 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and, by incorporation, section 270 et seq. of the New York

Debtor and Creditor Law ("NY DCL"), for the recovery of the fraudulent conveyance of the Tender Amount made to the Defendant by Suffolk in connection with the PlusFunds Tender Offer.

3. This conveyance (i) was made with the actual intent to hinder, delay or defraud the present and future creditors of Suffolk; (ii) was not made for fair consideration and/or in exchange for reasonably equivalent value, and (iii) was made at a time when Suffolk was insolvent, rendered Suffolk insolvent and/or left Suffolk with unreasonably small capital to satisfy its liabilities.

4. Recovery of this fraudulent conveyance from the Defendant is sought pursuant to section 550(a)(1) of the Bankruptcy Code because the Defendant was the initial transferee or the entity for whose benefit the fraudulent conveyance was made. In the alternative, recovery of the fraudulent conveyance is also sought from the Defendant pursuant to section 550(a)(2) of the Bankruptcy Code on the grounds that the Defendant was the immediate or mediate transferee, within the meaning of section 550(a)(2) of the Bankruptcy Code, and did not take the fraudulent conveyance for value, in good faith, and without knowledge of the voidability of the fraudulent conveyance.

5. In the alternative, this action seeks to recover the value of the Tender Amount on the ground that the conveyance of the Tender Amount unjustly enriched Defendant and violated equity and good conscience.

## II. BACKGROUND

6. PlusFunds was a New York-based investment advisor that offered investment vehicles to qualified investors, including the SPhinX family of hedge funds (the "SPhinX Funds").

7. The officers and directors of Suffolk LLP, Suffolk SUG LLC, Suffolk MKK LLC, and Suffolk KAV LLC (collectively, the "Suffolk Entities"), including Christopher

Sugrue, Mark Kavanagh, and Brian Owens (collectively, the "Suffolk Insiders"), were the shareholders and directors of PlusFunds.

8. The PlusFunds Tender Offer was, in large part, funded by a loan of $204 million made to Suffolk by Refco Capital LLC ("Refco Capital") on or around March 29, 2005. Upon information and belief, this loan was funded with securities and foreign exchange assets deposited at Refco Capital Markets, Ltd. ("RCM") by its customers.

9. On October 17, 2005, Refco Capital and certain of its direct and indirect affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Southern District of New York.

10. On March 6, 2006, PlusFunds filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Southern District of New York.

11. On March 16, 2007 (the "Suffolk Petition Date"), Marc S. Kirschner, as Court-approved Trustee for the Refco Litigation Trust[1] and representative of the estate of Refco Capital, Suffolk's only known non-contingent, liquidated creditor, filed against Suffolk an involuntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"), Case No. 07-10343 (CSS) (the "Suffolk Bankruptcy Case").

12. On April 11, 2007, the Delaware Bankruptcy Court entered an Order for relief in the Suffolk Bankruptcy Case.

13. On April 17, 2007, the Chapter 7 Trustee was appointed as chapter 7 trustee of the estate of Suffolk.

---

[1] The Trust is the duly authorized representative to commence all claims and causes of action formerly owned by the bankruptcy estates of Refco Inc. and certain of its subsidiaries pursuant to the Modified Joint Chapter 11 Plan of Refco Inc. and Certain of its Direct and Indirect Subsidiaries, as approved by the United States Bankruptcy Court for the Southern District of New York on December 15, 2006.

14. On May 31, 2007, the Delaware Court entered an order directing the procedural consolidation and joint administration of the Suffolk Action with the Chapter 7 bankruptcy cases of Suffolk SUG LLC (Case No. 07-10342), Suffolk KAV LLC (Case No. 07-10341), and Suffolk MKK LLC (Case No. 07-10340).

15. The claims being advanced in multi-district litigation (*In re Refco Securities Litigation*, Case. No. 07-md-01902-GEL (S.D.N.Y.)) pending in the Southern District of New York (the "Refco Multi-District Litigation") focus on, among other things, Refco Capital, Suffolk, PlusFunds and others involved in the fraudulent transactions at issue in this action.

16. Among the matters relevant to this action that are at issue in the Refco Multi-District Litigation are the relationship between Refco, Suffolk, PlusFunds, the Suffolk Insiders, and the reason and purpose for the PlusFunds Tender Offer, Refco's loan to Suffolk to fund the PlusFunds Tender Offer, and the source of this money.

17. In actions currently pending in the Refco Multi-District Litigation, the Joint Liquidators of the SPhinX Funds have alleged, among other things, that PlusFunds placed certain SPhinX Fund assets at risk by moving them to RCM and that these assets, among other RCM customer assets, were used to fund the loan to Suffolk so that Refco could "buy out" the Suffolk Insiders' interests in PlusFunds for far more than those interests were worth. These allegations, and their factual substantiation, are highly relevant to this action.

### III. JURISDICTION AND VENUE

18. This Court has jurisdiction over this adversary proceeding arising under title 11 pursuant to 28 U.S.C. § 1334(b).

19. This Court has personal jurisdiction over Defendant by virtue of the fact that, upon information and belief, Defendant transacts business within the state, the wrongful

conduct was committed within the state, and the wrongful conduct caused injuries within the state.

20. Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(c) because the Trustee is bringing claims against the Defendant pursuant to 11 U.S.C. § 544(b) and NY DCL § 270, et seq.

21. Venue is appropriate in this Court because the transfer of Suffolk's assets occurred in New York, and because of the close relationship to, and various overlapping facts with, the ongoing proceedings in the Refco Multi-District Litigation.

22. The Defendant is not a party to the Suffolk Bankruptcy Case and this action does not involve the claims adjudication process or debtor-creditor relations.

23. Furthermore, this action does not relate to any pending matter in the Delaware Bankruptcy Court. The Suffolk Bankruptcy is in the closing stages and it is not anticipated that there will be any further litigation in the Delaware Bankruptcy Court to recover assets of the estates of the Suffolk Entities. The sole action being taken by the Chapter 7 Trustee in the Delaware Bankruptcy Court relates to the collection of default judgments entered against Christopher Sugrue ("Sugrue"), one of the Suffolk Insiders, stemming from his misconduct as a director of Suffolk MKK LLC and Suffolk SUG LLC.

### IV.  PARTIES

24. The Chapter 7 Trustee is the duly appointed and acting chapter 7 trustee of Suffolk.

25. Suffolk, a Delaware corporation, has its registered agent at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808. Suffolk is not an operating business and therefore has no principal place of business.

26. PlusFunds, a Delaware corporation, was a New York based, United States registered, investment advisor.

27. The transaction which forms the basis for this Complaint, specifically the transfer of assets of Suffolk to the Defendant, occurred in the State of New York.

28. Upon information and belief, the Defendant is either located in the State of New York, is a corporation formed in the State of New York, is a resident of the State of New York, does business in the State of New York, is authorized or licensed to do business in the State of New York, has a presence in the State of New York, or otherwise can be found in the State of New York.

## V. FACTUAL BACKGROUND

29. Pursuant to the PlusFunds Stock Purchase Agreement by and between Defendant and Suffolk, dated March 29, 2005, the Defendant sold to Suffolk the PlusFunds Shares for an aggregate purchase price of **$75,821.28** (the "Tender Amount" or "Fraudulent Conveyance").

30. Suffolk was created to facilitate the purchase of PlusFunds in the PlusFunds Tender Offer.

31. Suffolk was thinly capitalized and had only a nominal amount of equity. Prior to the PlusFunds Tender Offer, Suffolk's principal asset was a Refco letter of credit, which it drew upon to facilitate the PlusFunds Tender Offer.

32. After the PlusFunds Tender Offer, Suffolk's principal assets were the shares of PlusFunds, which it purchased in the PlusFunds Tender Offer.

33. Upon information and belief, the PlusFunds Shares were of little or no value and the Defendant failed to provide Suffolk any value, much less reasonably equivalent value, for the Tender Amount.

34. As Suffolk had no assets of its own and funded the PlusFunds Tender Offer with money it borrowed from (and owed to) Refco, Suffolk rendered itself insolvent by purchasing the PlusFunds shares for far more than those shares were worth.

35. At all times during which the Tender Amount was conveyed to the Defendant, Suffolk was insolvent, became insolvent, and/or had unreasonably small capital in relation to its business or transactions at the time or as a result of the conveyance of the Tender Amount.

36. Furthermore, the conveyance of the Tender Amount was unlawful because the liabilities of Suffolk exceeded the fair value of the assets of Suffolk.

37. At all relevant times, Suffolk intended or believed it would incur debts beyond its ability to pay as they matured.

38. The Defendant, and/or Suffolk and the Suffolk Insiders knew that the Tender Amount was exponentially greater than the value of the PlusFunds Shares.

39. Upon information and belief, the Tender Amount was conveyed by Suffolk to the Defendant voluntarily and with actual intent to hinder, delay or defraud present and/or future creditors of Suffolk.

40. The conveyance of the Tender Amount by Suffolk to the Defendant vitiated essentially all of the assets of Suffolk available to creditors by stripping Suffolk of virtually all property available for execution and distribution.

41. The insolvency of Suffolk is a direct result of the Fraudulent Transfer.

42. The Tender Offer, when taken as a whole, was part of an on-going scheme to defraud creditors of Suffolk.

43. Upon information and belief, the conveyance of the Tender Amount by Suffolk to the Defendant was not supported by any legitimate business purpose.

44. At all relevant times, Defendant and/or Suffolk had actual knowledge regarding the unlawful nature of the Fraudulent Transfer.

45. At all times relevant hereto, the Fraudulent Transfer was a private transaction which did not implicate a securities clearing agency.

46. The Fraudulent Transfer was not a common transaction in the securities trade and industry.

47. The Fraudulent Transfer of Suffolk's property to Defendant is avoidable as a fraudulent transfer and is recoverable by the Chapter 7 Trustee.

## COUNT I
### AVOIDANCE OF THE CONSTRUCTIVE FRAUDULENT TRANSFER PURSUANT TO SECTIONS 548(a)(1)(B) & 550 OF THE BANKRUPTCY CODE

48. The Chapter 7 Trustee repeats and realleges the preceding paragraphs as if set forth fully herein.

49. The Fraudulent Transfer was made within two (2) years prior to the date of the filing of Suffolk petition for chapter 7 relief and constituted a transfer of interests in property of Suffolk.

50. The Fraudulent Transfer to Defendant constituted a transfer of interests in the property of Suffolk and Suffolk received no consideration therefor. Consequently, Suffolk received less than reasonably equivalent value in exchange for the Fraudulent Transfer.

51. Upon information and belief, at all times relevant during the Fraudulent Transfer, Suffolk was insolvent, or became insolvent, and/or had unreasonably small capital in relation to its business or its transactions at the time or as a result of the Fraudulent Transfer.

52. Because of the Fraudulent Transfer, Suffolk was unable to repay its debts to Refco Capital.

53. Accordingly, the Fraudulent Transfer is an avoidable transfer pursuant to section 548(a)(1)(B) of the Bankruptcy Code and the Chapter 7 Trustee may recover, for the benefit of Suffolk's estate, the Fraudulent Transfer from the Defendant pursuant to section 550 of the Bankruptcy Code.

## COUNT II
### AVOIDANCE OF THE ACTUAL FRAUDULENT TRANSFER PURSUANT TO SECTIONS 548(a)(1)(A) & 550 OF THE BANKRUPTCY CODE

54. The Chapter 7 Trustee repeats and realleges the preceding paragraphs as if set forth fully herein.

55. The Fraudulent Transfer was made within two (2) years prior to the date of the filing of Suffolk petition for chapter 7 relief and constituted a transfer of interests in property of Suffolk.

56. Upon information and belief, at all times relevant during the Fraudulent Transfer, the Defendant and/or Suffolk acted with actual intent to hinder, delay or defraud present and/or future creditors of Suffolk as a result of the Fraudulent Transfer.

57. Defendant acted in willful ignorance of Suffolk's fraudulent purpose.

58. Specifically, the Fraudulent Transfer depleted substantially all of Suffolk's assets for which Suffolk received little or no consideration in exchange therefor.

59. The Fraudulent Transfer ultimately benefited the Suffolk Insiders, who were shareholders of PlusFunds, to the detriment of Refco Capital, Suffolk's largest creditor.

60. The Stock Purchase Agreement, when taken as a whole, can only be described as a "cashing out" scheme for the exclusive benefit of the Suffolk Insiders.

61. Accordingly, the Fraudulent Transfer is an avoidable transfer pursuant to section 548(a)(1)(A) of the Bankruptcy Code and the Chapter 7 Trustee may recover, for the benefit of Suffolk's estate, the Fraudulent Transfer from the Defendant pursuant to section 550 of the Bankruptcy Code.

## COUNT III
## AVOIDANCE OF THE FRAUDULENT TRANSFER
## PURSUANT TO SECTION 544(B) OF THE BANKRUPTCY CODE AND
## NY DCL SECTION 270 ET SEQ.

62. The Chapter 7 Trustee repeats and realleges the preceding paragraphs as if set forth fully herein.

63. Section 544(b) of the Bankruptcy Code provides a trustee the power to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law . . . ." 11 U.S.C. § 544(b).

64. Accordingly, the Chapter 7 Trustee commences this claim pursuant to section 544(b) of the Bankruptcy Code and NY DCL § 270 et seq. to avoid the Fraudulent Transfer.

65. The Fraudulent Transfer to Defendant constituted a conveyance of interests in the property of Suffolk and Suffolk received no consideration therefor. Consequently, Suffolk did not receive fair consideration in exchange for the Fraudulent Transfer.

66. In fact, upon information and belief, no consideration whatsoever was given for the Fraudulent Transfer as the property obtained by Suffolk was essentially worthless.

67. Upon information and belief, the value of the property obtained by Suffolk was disproportionately small as compared to the significant value of the property transferred to the Defendant by Suffolk.

68. Upon information and belief, at all times during the Fraudulent Transfer, Suffolk was insolvent, became insolvent and/or had unreasonably small capital as a result of the Fraudulent Transfer.

69. In addition, at all times relevant hereto, Suffolk intended or believed that it would incur debts beyond its ability to pay as they matured.

70. Upon information and belief, the Fraudulent Transfer was made with actual intent by Suffolk and/or the Defendant to hinder, delay or defraud present and/or future creditors of Suffolk.

71. The Fraudulent Transfer is an avoidable conveyance pursuant to §544(b) of the Bankruptcy Code and NY DCL § 270 et seq., and the Chapter 7 Trustee may recover, for the benefit of Suffolk's estate, the Fraudulent Transfer from the Defendant.

## COUNT IV
## [PLEADED IN THE ALTERNATIVE]
## UNJUST ENRICHMENT

72. The Chapter 7 Trustee repeats and realleges the preceding paragraphs as if set forth fully herein.

73. As described fully in the preceding paragraphs of this Complaint, Defendant was enriched by the Fraudulent Transfer.

74. The transfer of the valueless PlusFunds Shares by the Defendant in exchange for the Tender Amount by Suffolk constituted an unjust enrichment.

75. The Defendant profited from the conveyance of the Tender Amount by Suffolk to the Defendant.

76. The Defendant has unjustly retained the benefit of the Fraudulent Transfer to the detriment of creditors of the estate of Suffolk.

77. The creditors of Suffolk, specifically Refco Capital, suffered an impoverishment in that the conveyance of the Tender Amount by Suffolk to the Defendant stripped Suffolk of virtually all assets available to pay its creditors.

78. The preceding paragraphs of this Complaint demonstrate that a direct relationship existed between the enrichment and the impoverishment.

79. There is an absence of any justification for the Defendant and/or Suffolk's conduct.

80. The conveyance of the Tender Amount to the Defendant by Suffolk violates fundamental principles of justice, equality, and good conscience.

81. The Chapter 7 Trustee has no adequate remedy at law.

### REQUEST FOR RELIEF

WHEREFORE, the Chapter 7 Trustee requests that the Court enter judgment:

(i) avoiding the Fraudulent Transfer as a fraudulent transfer pursuant to section 548(a)(1)(B) of the Bankruptcy Code;

(ii) avoiding the Fraudulent Transfer as a fraudulent transfer pursuant to section 548(a)(1)(A) of the Bankruptcy Code;

(iii) avoiding the Fraudulent Transfer as a fraudulent transfer pursuant to NY DCL § 270 et seq.;

(iv) decreeing that Defendant shall pay to the Chapter 7 Trustee on behalf of the estate of Suffolk, the full amount of the Fraudulent Transfer received, with lawful pre- and post-judgment interest and costs of this action, including costs and reasonable attorneys' fees incurred in connection with the investigation and prosecution of the instant action;

(v) requiring Defendant to pay to the Chapter 7 Trustee all reasonable attorney's fees and costs incurred by the Chapter 7 Trustee in this action, including expert-witness fees pursuant to NY DCL § 276-a;

(vi) entering judgment against the defendant and any immediate or mediate transferee under 11 U.S.C. § 550;

(vii)   granting such other and further relief, at law or in equity, that the Court may deem just.

Dated:  March 12, 2009

**CIARDI CIARDI & ASTIN**

_____
Dimitri L. Karapelou (ID No. 734165)
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
dkarapelou@ciardilaw.com

and

Albert A. Ciardi, III
Shannon D. Leight
Joseph V. Bongiorno
Ciardi Ciardi & Astin, P.C.
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103
Telephone:  (215) 557-3550
Facsimile: (215) 557-3551
aciardi@ciardilaw.com
sleight@ciardilaw.com
jbongiorno@ciardilaw.com

*Counsel for George L. Miller, Chapter 7 Trustee for Suffolk, LLC*